**PALLMA et al. v. FOX et al.**

United States District Court
S. D. New York.
July 26, 1949.

Leonard Zissu, New York City, for plaintiffs, Abraham Marcus, Leonard Zissu, New York City, of counsel.

Fitelson, Mayers & London, New York City, for defendants, Julian T. Abeles, Edwin P. Kilroe, New York City, of counsel.

GODDARD, District Judge.

This is a motion to review the supplemental report of a Special Master.

The facts of the case are fully set forth in the prior opinion of this court, 93 F.

Supp. 134, confirming in part the original report of the Special Master and need not be reiterated here. The proceeding was remanded to the Special Master to take evidence and report on two questions, namely—

1—The amount the plaintiffs are entitled to from the "ASCAP" revenues received by defendants for the years 1928 through 1935.

2—The amount the plaintiffs are entitled to from the funds realized from the synchronization rights.

With an exception of á general objection to the court's disposition of the original Special Master's report the accounting made by the Special Master in his supplemental report as to the amount due plaintiffs as their share of the "ASCAP" revenues for the years 1928 through 1935 there is no dispute. The Special Master found that the plaintiffs were entitled to $1,083.37 with interest to date, making a total of $2,069.24 for this item. The Special Master in arriving at this figure used a formula of comparative sales of plaintiffs and defendants compositions for the period in question. The formula was obtained from records submitted by defendants and was the best available and a reasonably accurate means of computing the value of the plaintiffs' songs in the combined catalogue. The defendants do not object to the Master's disposition of this item and it is accordingly confirmed.

Both parties are in agreement that the interest on the sum due the plaintiffs for the "ASCAP" revenue from 1936 through the first quarter of 1946 is erroneous. Upon the consent of the parties this item of interest is reduced from $1,300.84 to $752.97, thus reducing the total amount due the plaintiffs from 1936 to the first quarter of 1946 from $3,468.90 to $2,921.03.

The remaining item is the amount due from the revenue realized from the synchronization rights.

The Special Master found the total revenue received from the "bulk" contracts for synchronization was $562,944.70. He was of the opinion that this court previously held his deduction of $175,000 from this sum derived from the "ERPI" contracts was improper. The court did not pass upon the question but merely pointed out what appeared to be an inconsistency in terms.

As is pointed out in the court's prior opinion there were three types of contracts. The "bulk" contracts consisted either of a flat fee for\ the use of any or all songs in the repertoire or a fee based upon such use with a base minimum payment. The other type was payment made on a per use basis.

In his supplemental report the Special Master held that the revenue derived from licensing the synchronization rights was contracted for and paid on the theory of availability rather than use and to permit defendants to account on a per use basis is improper. Further, he seems to have felt that in view of the court in its previous opinion having pointed out the inconsistency referred to, he should hold that the defendants must account on the entire $562,944.70 rather than being credited with already having properly accounted for $175,000 of the $562,944.70.

In the absence of any evidence clearly separating the receipts from synchronization for the various years under review he applied the comparative sheet music sales ratio for the entire period from 1928 to the end of 1945 to the synchronization revenues for the same period.

The defendants originally contended that since the contract between plaintiffs and defendants was made at a time when defendants were bound by the "ERPI" formula for payment the plaintiffs must be held to have contracted to be paid, on the same basis. The defendants further contend that they have accounted to the plaintiffs on the "ERPI" formula and the plaintiffs are not entitled to any further accounting.

The so called "ERPI" formula was a system of payment whereby a producer paid

so much for each use. He could use the song in four ways, namely—background instrumental, background vocal, visual instrumental, and visual vocal. The uses were graded in importance such as four points for visual vocal; three points for visual instrumental; two points for background vocal, and a point for background instrumental. As the producer used the song in one of the four ways it was credited with the corresponding points and a price paid for each point.

The defendants' contention that the entire revenue derived from the "bulk" contracts should be accounted for on a per use basis because of the prevailing "ERPI" formula of payment is not entirely sound. The defendants, although knowing of the per use basis of payment, entered into contracts for a flat fee and minimum fee payments. Thus, although they licensed the songs on other than a per use basis, they contend that the plaintiffs must be limited to an accounting on such a basis.

On the remand hearing, the defendants' position was that if their initial contention is not sustained, then the ratio for an accounting should be the comparative *use* and not comparative *sales* as used by the Special Master.

The Special Master in his original report held that "when plaintiffs contracted with defendants, they were bound by such pre-existing agreement of the defendants with 'ERPI'. The figure of $562,944.70 should be decreased by the amount of the 'ERPI' payment $175,000, leaving $387,944.70".

This finding of the Master is confirmed for certainly the defendants need not account for the synchronization revenues on a different basis than upon which they were received. The use of a comparative sales ratio although some indication of the respective values of the songs in the combined catalogue, is deficient in that the sales of sheet music would not be indicative of the demand for the song as background.

It is also true that the comparative use ratio is likewise deficient since it runs contra to the fact that the consideration was paid for the availability and not for use. A producer looking prospectively may pay to have a song available for use and then for any number of reasons may never use it. It is also deficient in another respect in that the manner of use would be an important factor in the ultimate revenue received. There is no evidence as to the manner of use of the respective catalogues.

However, the comparative sales ratio would be some indication of the public demand for the song, and hence some evidence of the producer's desire to have the song available. The per use ratio would be some indication as to the possible value of the piece as background music which would not be shown in the comparative sales ratio.

Therefore, I think that a mean ratio of the per use ratio and comparative sales ratio would be a fair and reasonably accurate method of accounting for the synchronization revenues.

The comparative sales ratio was .0128 and the per use ratio .00029, giving a mean ratio of .00654 of $387,944.70 making $2,537.16 of which plaintiffs are entitled to a half or $1,268.58. From this sum there should be deducted monies already paid in the amount of $310.77, leaving a balance due plaintiffs of $958.81 which, with interest for an average of twelve years, totals $1,646.43.

The supplemental report of the Special Master is further modified by allowing plaintiffs interest in the sum representing the unaccounted "folio" royalties in the sum of $350.57, making a total of $1,080.92.

The Special Master's supplemental report is modified to the extent shown in the recapitulation. In all other respects it is confirmed.

Recapitulation

| Item | Special Master's | Court's Modification |
|---|---|---|
| Under Exhibit "K" [excluding Pallma note] | $313.83 | $313.83 |
| Interest charge | 90.86 | 90.86 |
| Mechanical receipts | 86.67 | 86.67 |
| | | (1) |
| Folio royalties | 730.35 | 1080.92 |
| Transportation | 136.32 | 136.32 |
| ASCAP revenues from 1928 through 1935 | 2069.24 | 2069.24 |
| | | (2) |
| ASCAP revenues from 1936 through first quarter 1946 | 3468.90 | 2921.03 |
| | | (3) |
| Synchronization revenues from 1928 through 1945 plus interest | 5659.08 | 1646.43 |
| | $12555.25 | $8351.30 |

(1) The figure contains interest of $350.57.
(2) Reduced interest upon consent of parties.
(4) Different formula of accounting used.

Due Warner ............................. $4175.65
Due Pallma .................. $4,175.65
Less Pallma's note and interest  3,813.89

$316.76